**TEXAS OIL & GAS CORP., a corporation, and John H. Hill, an individual, Appellants,**

v.

**PHILLIPS PETROLEUM COMPANY, a corporation, Appellee.**

No. 10059.

United States Court of Appeals. Tenth Circuit.

Feb. 24, 1969.

Rehearing Denied April 2, 1969.

George L. Verity, Brown, Verity & Brown, Oklahoma City, Okl., for appellants.

Edward J. Fauss and Don L. Jemison, Oklahoma City, Okl. (Wm. J. Zeman and Lloyd Minter, Bartlesville, Okl., with them on the brief), for appellee.

Before MURRAH, Chief Judge, BREITENSTEIN and HILL, Circuit Judges.

PER CURIAM.

In this federal question suit, wholly between private parties, the appellants, oil and gas lessees of federal lands in Oklahoma, collaterally attack well spacing and forced pooling orders of the Oklahoma Corporation Commission insofar as they undertake to space and pool their federal leases. The effect of the spacing order is to establish a 640 acre spacing unit for the drilling and production of gas and gas condensates from a common source of supply. The spacing

unit includes the federal oil and gas leases in question, along with privately owned and leased lands, a part of which is owned by the appellee Phillips Petroleum Company. The forced pooling order had the effect of pooling the spaced unit for the drilling of a permitted well by the lessee Phillips, the cost to be borne proportionately by the lessees in the unit. Any lessee electing not to participate in the permitted well was to be paid a lease bonus determined by the Oklahoma Corporation Commission to be $40.00 per acre. The assignors of the appellants elected not to participate and the title to their leases was transferred by operation of law to Phillips upon the payment of the prescribed lease bonus.

The appellants here succeeded to the rights of their predecessor after the election and transfer of title. They do not seek a review of the orders of the Corporation Commission nor of the administrative orders of the Bureau of Land Management which approved the transfer; rather, they collaterally attack only that portion of the Oklahoma Corporation's well spacing and pooling orders which purport to space the federal leases within the unit and to transfer the title of their leases to Phillips Petroleum Company upon their election not to participate in the drilling of the permitted well. They deny that either the Secretary of the Interior or any of his subordinates are necessary or proper parties to the litigation and say that the judgment sought will merely determine the rights of the parties to the suit. They agree that state law governs matters which concern only individuals but insist that the spacing order directly affects the interest of the United States and that as federal lessees they have standing to assert the federal interest, and that the federal court is empowered to grant the relief sought.

They concede the police power of a state over federal lands within its boundaries unless and until the federal government has asserted its constitutionally paramount power by appropriate statute and regulation. The contention here is simply that by statutes and regulations the federal government has effectively asserted its jurisdiction to regulate the exploration, development, and conservation of these federal lands for oil and gas; that federal jurisdiction having been asserted is exclusive, and consequently only the federal government has jurisdiction over these leases to space or communitize them for oil and gas; and that the state spacing and forced pooling orders are therefore void and invalid insofar as these leases are involved.

■ In an exhaustive opinion, the trial court recognized the paramount constitutional power and authority of the federal government over public lands, but took the view that the Constitution left to the Congress the determination of when and where and to what extent this power would be exercised.

Turning to the applicable Leasing Act of 1920 (41 Statute 437, 30 U.S.C. § 181 et seq.), and particularly to § 187, the court could find nothing in the statutes indicating a Congressional intent to assert exclusive control of federal lands leased for oil and gas development. Specific reference was made to that part of § 187 which provides that "none of such provisions shall be in conflict with the laws of the State in which the leased property is situated." Reference was also made to that part of § 189 of the Leasing Act, which provides:

> Nothing in said section shall be construed or held to affect the rights of the States or other local authority to exercise any rights which they may have, including the right to levy and collect taxes upon improvements, output of mines, or other rights, property, or assets of any lessee of the United States.

■ Reference was then made to applicable federal case law to the effect that State law and the State police power extends over the federal public domain within its boundaries until preempted, and only to the extent preempted, by federal law. Thus in determining the

extent to which its exclusive federal control is extended over public lands within a State, the court noted that while the Congress may not elect to assume exclusive control, it may in its discretion prescribe certain limited controls, and that Congress had not undertaken to assume exclusive control but has imposed two significant conditions which must be satisfied before the State police power in the field of conservation may be ultimately effected. The court then noted that one of the conditions of federal control is that a federal mineral lessee may not assign his lease without the consent of the Secretary of Interior. See § 187. And that a pooling or communitization agreement involving federal and non-federal lands must also be approved by the Secretary or his designee. See Title 30 C.F.R. 221. The court recognized that the challenged pooling order did effect the transfer or assignment of the working interest involved to Phillips for the prescribed bonus and effected a communitization or a pooling of the leases in the spacing unit. But the court was of the opinion that the evidence showed without dispute that the federal government approved the transfer of the working interest as effected by the pooling order of the Oklahoma Corporation Commission, and had approved the communitization of the leases in the spacing unit, thus satisfying the asserted limited federal controls.[1]

---

1. Pursuant to administrative proceedings before the Bureau of Land Management, Chief of the Branch of Mineral Adjudication recognized the effect of the Oklahoma Corporation Commission's orders, and the following quote from his decision is pertinent:

"Accordingly, Corporation Commission Order No. 51093 [actually referring to Order No. 54373 (R. 933)] is hereby recognized as effecting a transfer by operation of Oklahoma law, of the working interest of Mr. Connell to Phillips Petroleum Company in Lots 1, 4, 5, 8 and 9, Sec. 18, T. 17 N., R. 25 W., I.M. Oklahoma in the production of gas and gas condensate from the Tonkawa Sands formation, restricted to the existing well drilled under the authorization of order 51093. Record title will remain in the name of Thomas Connell."

An appeal to the Director of the Bureau of Land Management resulted in the following order, quoted in part:

"By its Corporation Commission, the State of Oklahoma has acted in a matter normally within its competence in dealing with conservation of oil and gas. The effects of its actions are not inconsistent with any Federal law or regulation. The right of the United States to receive royalty based on production of oil or gas from the leasehold has not been impaired or infringed. The Order affects only the activity of the lessee. Furthermore, the Geological Survey has indicated willingness to approve the communitization agreement proposed by Phillips for all section 18, T. 17 N., R. 25 W., I.M., and has concurred in the drilling and spacing unit established by the Commission. The assertion that Federal authority over federal leases has been abdicated is unfounded.

"The Order No. 54373 of the Oklahoma Corporation Commission was certified to the land office as being final in all respects. Accordingly, recognition by the land office of the transfer of the working interest set forth in the said Order from Thomas Connell to Phillips Petroleum Company was proper."

The testimony of the Supervisor of the local office of the United States Geological Survey is also pertinent. He was asked whether applicable regulations required a federal oil and gas lessee to comply with applicable state law:

"Q. Taking the situation involved in this present lawsuit where the Oklahoma Corporation Commission had entered a spacing order, 640 acres for the Tonkawa formation and as was in this case, the Oklahoma Corporation Commission designated the well location and the well was drilled, and, as you know, the federal leasee did not choose to cooperate or participate, is it your position that the federal leasee is under an obligation pursuant to the terms of his lease and the regulations to cooperate and to abide by the applicable state law, which we have just defined as including the spacing laws, and that if he failed to do so, you would recommend cancellation of the lease? A. With qualifications, provided he took no alternative action which may have been available to him.

. . .

Q. Yes. And you would not have required or permitted him to have

The court was finally of the opinion that the action of the federal authorities was consonant with the applicable regulation, and could find "no significant threat to any identifiable federal policy or interest." Judgment was entered dismissing the action for failure to state a claim upon which relief could be granted.

Our examination of the applicable law leads us to an affirmance of the judgment for the reasons stated in the trial court's opinion, D.C., 277 F.Supp. 366.

drilled a well which would be in violation of the applicable state law, to-wit, the spacing? A. Not in this case we didn't consider that it would be proper to do so, no.

Q. And where there is valid spacing, or where there is spacing as the Oklahoma Corporation Commission did in this case and there is an existing well but not on federal lands, you would not permit a federal leasee to drill in violation of that law for that spacing order? A. For oil and gas in the Tonkawa sand, 640 acres we recognize as the spacing.

Q. Yes. And you recognize this as the spacing prior to the execution of the communitization agreement? A. Yes, we recognized it as proper spacing prior to the communitization agreement."