580 P.2d 15

**The ARIZONA STATE REAL ESTATE DEPARTMENT and the People of the State of Arizona ex rel. Bruce E. Babbitt, the Attorney General, Appellants,**

v.

**AMERICAN STANDARD GAS & OIL LEASING SERVICE, INC., an Arizona Corporation, Appellee.**
**No. ICA–CIV3659**

Court of Appeals of Arizona,
Division 1,
Department C.

April 25, 1978.

Rehearing Denied May 17, 1978.

Review Denied June 20, 1978.

184

Bruce E. Babbitt, Former Atty. Gen. by Thomas I. McClory, Andrew W. Bettwy, Asst. Attys. Gen., Phoenix, for appellants.

Sullivan, Mahoney & Tang by Thomas Tang, Phoenix, for appellee.

OPINION

FROEB, Chief Judge.

The question in this case is whether a course of business dealing with oil and gas "leases" requires a real estate broker's license in Arizona.

The Arizona State Real Estate Department and the Arizona Attorney General brought suit against American Standard Gas & Oil Leasing Service, Inc. to enjoin it from engaging in the business of a real estate broker" without a license in violation of A.R.S. § 32–2122(A) and to assess civil penalties. The trial court denied relief after an evidentiary hearing. This appeal from the denial of the preliminary injunction followed, as prescribed by A.R.S. § 12–2101(F)(2).

American Standard is an Arizona corporation engaged in the business of assisting customers in filing for oil and gas leases issued under the Mineral Lands Leasing Act (30 U.S.C.A. § 226). The drawings for these leases are conducted under the authority of the Secretary of the Interior through the Bureau of Land Management in the state where the land parcels are located. The land parcels are not within any known geological structure of a producing oil and gas field, and the leases are awarded in a lottery-type process involving simultaneous filings by bidders using the Bureau of Land Management form of Simultaneous Oil and Gas Drawing Entry Card. American Standard assists the customer by selecting the parcel and by forwarding the entry card, together with the

required fee, to the proper Bureau of Land Management office. The winner of the drawing obtains the right to an oil and gas lease on the parcel. Issuance of the lease requires an advance yearly rental payment of fifty cents per acre. As part of its service, American Standard advances the first year's rental on behalf of the customer to obtain the lease. The lease involved is printed on a Bureau of Land Management form and is called Lease for Oil and Gas. It is issued for a period of ten years and, thereafter, so long as oil and gas is produced in paying quantities. The parties are referred to in the lease as lessor and lessee. Rental is computed on a per-acre basis. The lessee may enter upon the land and drill wells and do a variety of things related to drilling. The lessor reserves various rights in the land and may sell, lease or otherwise dispose of the land to the extent the surface is not necessary for the use of the lessee. The lease rights may be assigned.

The facts further indicate that no land in Arizona is involved and no customers of American Standard are residents of the State of Arizona.

A.R.S. § 32–2122(A) states:

It shall be unlawful for any person to engage in the business of a real estate broker or real estate salesman or the business of a cemetery broker or cemetery salesman without first obtaining a license as prescribed in this chapter and otherwise complying with the provisions of this chapter.

A.R.S. § 32–2101(25) states, in part, as follows:

"Real estate broker" means a person, other than a salesman, who, for another and for compensation:

. . . . .

(c) Negotiates, offers, attempts or agrees to negotiate the sale, exchange, purchase, rental or leasing of real estate.

(d) Lists, offers, attempts or agrees to list real estate for sale, lease or exchange.

. . . . .

(h) Advertises or holds himself out as being engaged in the business of buying, selling, exchanging, rental or leasing real estate or counseling or advising thereon.

(i) Assists or directs in the procuring of prospects, calculated to result in the sale, exchange, leasing or rental of real estate.

(j) Assists or directs in the negotiation of any transaction calculated or intended to result in the sale, exchange, leasing or rental of real estate.

. . . . .

(1) Engages in the business of assisting or offering to assist another in filing an application for the purchase or lease of, or in locating or entering upon lands owned by the state or federal government.

. . . . .

It is clear that if the oil and gas lease at issue here represents a lease of an interest in real estate, it comes within the provisions of A.R.S. § 32–2101(25). Real estate is defined in A.R.S. § 32–2101(24) as including "leasehold-interests and any estates in land as defined in title 33, chapter 2, articles 1 and 2, regardless of whether located in this state."

Is the oil and gas lease an interest in real estate? American Standard refers us to numerous cases from other state and federal courts in support of the proposition that an oil and gas lease is not an interest in real estate. The cases refer variously to the lease as personal property, or a license to explore, or an incorporeal hereditament, or a profit a'prendre, or a chattel real. For a discussion of the problem see 1A W. Summers, *Oil and Gas* § 152 (1954).

We need not, however, look beyond the Arizona Supreme Court decision in *State v. Superior Court,* 113 Ariz. 248, 550 P.2d 626 (1976) for guidance as to whether the interest involved here is an interest in real estate. Dealing with an issue of taxation, the Supreme Court there held that an oil and gas lease, with terms similar to those here, created in the lessee an interest in land known as a qualified or determinable fee. The court pointed out that "a

qualified or determinable fee is a freehold estate and, as such, is a taxable interest in land." *Id.* at 250, 550 P.2d at 628. While taxation was the issue in that case, we are referred to no authority which convinces us that a different analysis ought to apply in construing the Arizona real estate licensing statute. If anything, where the same would not be true of a tax statute, the policy of the law would extend the reach of a real estate licensing statute, since its purpose is to regulate real estate activities so as to protect the public. *Realty Executives, Inc. v. Northrup, King & Co.,* 24 Ariz.App. 400, 539 P.2d 514 (1975); *Bonasera v. Roffe,* 8 Ariz.App. 1, 442 P.2d 165 (1968).

■ It is clear, then, that American Standard acts as a real estate broker within the meaning of A.R.S. § 32–2101(25) when it engages in the business earlier described and must be licensed accordingly.

The second issue presented is raised by American Standard and relates to the commerce clause of the United States Constitution (art. 1, § 8). American Standard argues that its activity relates only to interstate business in federal lands located outside of Arizona, with customers who are not residents of Arizona and with federal oil and gas leases which are entirely within the jurisdiction of the federal government. It contends that the attempted regulation of this activity by the State of Arizona violates the commerce clause of the United States Constitution on two alternative grounds. The first is that the doctrine of pre-emption bars state regulation of the activity, and the second is that state regulation interferes with the free flow of interstate commerce.

For an expression of both arguments, we are referred to *Southern Pacific Co. v. Arizona,* 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945) in which the United States Supreme Court stated:

> [I]n the absence of conflicting legislation by Congress, there is a residuum of power in the state to make laws governing matters of local concern, which nevertheless in some measure affect interstate commerce or even, to some extent, regulate

it. . . . But ever since *Gibbons v. Ogden,* 9 Wheat. 1, 6 L.Ed. 23, the states have not been deemed to have authority to impede substantially the free flow of commerce from state to state, or to regulate those phases of the national commerce which, because of the need of national uniformity, demand that their regulation, if any, be prescribed by a single authority. *Id.* at 767, 65 S.Ct. at 1519, 89 L.Ed. at 1923.

We do not find that the facts of this case bring American Standard into either of these categories.

■ We will accept for the sake of argument that the questioned activity constitutes interstate commerce. There is, however, no federal pre-emption of the field. The involvement of the federal government extends to the leasing and to the federal lands subject to the leasing, the authority for which is found that in relevant acts of Congress. The right to participate as a lessee is shared equally by all members of the public within and without the State of Arizona. There is no need for regulation of brokers by a single national authority in order to bring about national uniformity. The brokering activities involved here are not the subject of preemptive federal legislation and are left to state regulation. *See Huron Portland Cement Co. v. City of Detroit,* 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960). The pre-emption doctrine does not apply. *See also Texas Oil & Gas Corp. v. Phillips Petroleum Co.,* 277 F.Supp. 366 (W.D.Okl.1967) (relating to federal oil and gas leases) *aff'd.* 406 F.2d 1303 (10th Cir. 1969), *cert. denied* 396 U.S. 829, 90 S.Ct. 80, 24 L.Ed.2d 80 (1969).

■ The other inquiry is whether the requirement of licensing in this situation substantially impedes the free flow of commerce. The answer that it does not also seems obvious. There is very little "flow of commerce" involved where a broker in one state arranges a land transaction between a citizen of another state and the federal government. Local interest in requiring locally based business to adhere to state

standards is clearly predominant. The State of Arizona, acting under its police powers, has the right to regulate in order to protect the reputation of its citizens as well as to protect them against those who do business in the state. *Sligh v. Kirkwood,* 237 U.S. 52, 35 S.Ct. 501, 59 L.Ed. 835 (1915). States may, within certain limitations not pertinent here, lawfully regulate and license domestic businesses which are engaged in interstate commerce. *Milk Control Board v. Eisenberg Farm Products,* 306 U.S. 346, 59 S.Ct. 528, 83 L.Ed. 752 (1939); *Hartford Accident & Indemnity Co. v. Illinois,* 298 U.S. 155, 56 S.Ct. 685, 80 L.Ed. 1099 (1936). The Arizona Supreme Court has ruled on this question with respect to the licensing of a travel agent in *Francis v. Allen,* 54 Ariz. 377, 96 P.2d 277 (1939). The court there held that a state can regulate domestic businesses even if such regulation has an effect on interstate commerce.

For the reasons stated, the judgment of the superior court is reversed and the case is remanded for entry of a preliminary injunction against American Standard consistent with this opinion. The record does not indicate that the trial court ordered the hearing on the preliminary injunction to constitute the hearing on the permanent injunction as allowed by R.Civ.Proc., Rule 65(a)(2), and, therefore, it will be necessary for the trial court to conduct such further proceedings and enter such further orders as necessary to resolve finally the issues raised by the pleadings.

DONOFRIO, P. J., Department C, and WREN, J., concur.