T.C. Memo. 2000-15


UNITED STATES TAX COURT


JACK J. GRYNBERG, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12918-91.                    Filed January 13, 2000.


<u>Jeffrey F. Reiman</u> and <u>Jeffrey M. Brenman</u>, for petitioner.

<u>John A. Weeda</u> and <u>Frederick J. Lockhart, Jr.</u>, for
respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

FAY, <u>Judge</u>:  Respondent determined the following deficien-
cies in, and additions to, petitioner's Federal gift taxes:

|                |            | Additions to Tax | |
| Quarter Ending | Deficiency | Sec. 6651(a)(1) | Sec. 6653(a) |
| --- | --- | --- | --- |
| Mar. 31, 1980 | $1,248,737 | $312,184 | $62,437 |
| June 30, 1980 | 588,884 | 147,221 | 29,444 |
| Sept. 30, 1980 | 158,804 | 39,701 | 7,940 |
| Dec. 31, 1980 | 296,003 | 74,001 | 14,800 |
| Mar. 31, 1981 | 611,271 | 152,818 | 30,564 |
| Total | 2,903,699 | 725,925 | 145,185 |

All section references are to the Internal Revenue Code in effect for 1980 and 1981, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise noted.

After concessions, the Court must decide: (1) Whether petitioner gifted coal, uranium, oil, and gas leases (collectively, mineral leases), or overriding royalty interests,[1] to his wife; if so, (2) the value of such gifts; and (3) whether petitioner is liable for additions to tax for not filing Federal gift tax returns and for negligently or intentionally disregarding the applicable rules and regulations. Petitioner concedes that he made completed gifts of overriding royalties to trusts for the benefit of his children; the parties do not agree, however, on royalty values for purposes of computing the gift tax.

## FINDINGS OF FACT

We incorporate in this opinion the parties' stipulation of facts, stipulation of settled issues, and exhibits. Petitioner,

---

[1]An overriding royalty represents the right to a fraction or percentage of the lessee's share of the minerals removed, as distinguished from the royalty interest retained by the lessor. See William & Meyers, Manual of Oil and Gas Terms 765 (9th ed. 1994).

who resided in Englewood, Colorado, when he petitioned the Court, did not file Federal gift tax returns for the periods under consideration.

Petitioner is a professional petroleum engineer. In 1955, he started a consulting practice in petroleum and geophysical engineering called Jack Grynberg & Associates (JGA). Four years later, he married Celeste Grynberg (Mrs. Grynberg); they have three children. Shortly after their marriage, Mrs. Grynberg contributed $10,000 and several stocks to the business, which petitioner used to convert the consulting firm to an independent oil and gas operation, doing business as JGA. From 1959 through at least the periods in issue, the Grynbergs did not file Forms 1065, U.S. Partnership Return of Income, or have a written partnership agreement.

The couple began acquiring Federal mineral leases in 1959, mainly by participating in a lottery conducted by the Bureau of Land Management of the U.S. Department of the Interior. Under this system, the Federal Government leased the mineral rights of its lands in a public drawing. Each person wishing to obtain a lease had to complete an application form and pay a filing fee; no person, however, could lease more than 246,080 acres of Federal land in each State, except Alaska. Although each applicant was limited to one application per lease, spouses could

apply simultaneously for the same parcel to increase their chances of winning it.

Because Mrs. Grynberg was not versed in matters of oil and gas leasing——she was a psychiatric social worker by profession—— petitioner invariably handled the business of JGA with the help of employees. Acting on behalf of JGA, petitioner selected the leases on which to file applications; the employees then prepared and filed them under petitioner's or his wife's name. If petitioner deemed a lease particularly valuable, he would instruct the staff to file two applications for it, one in each name. Under the Federal lottery system, both petitioner and Mrs. Grynberg won leases, all of which were similarly managed by JGA.

JGA maintained one operating bank account, on which the Grynbergs were signatories. Any income and expenses attributable to the leases were deposited into and paid out of that account. The sale proceeds of any leases were also transferred to the operating account. Except for 1981 and 1982, the Grynbergs have filed joint Federal income tax returns since 1959, reporting the income and expenses of JGA on Schedules C, Profit or Loss From Business.

During the quarters at issue, petitioner transferred mineral leases and overriding royalties (collectively, mineral interests) to his wife in an attempt to place the property beyond the reach of a plaintiff class suing petitioner. See Danzig v. Jack

Grynberg & Associates, 208 Cal. Rptr. 336 (Ct. App. 1984) (the
Danzig case). The story of that litigation began more than 20
years ago when petitioner publicly offered limited partnership
interests in an oil exploration partnership in which JGA was the
general partner. A dispute arose between the limited partners
and the Grynbergs regarding mismanagement of the partnership and
the status of certain oil and gas leases belonging to the
Grynbergs that JGA purportedly contributed to the partnership.
While the couple intended that title to the oil and gas leases
would revert to their possession when the partnership terminated,
the limited partners were led to believe that the leases were
distributable assets of the partnership.

The Danzig Case

In March 1975, the limited partners filed a class action in
the Superior Court of California, Alameda County (superior
court), against JGA and the Grynbergs, alleging breach of
fiduciary duty and fraud and seeking rescission of their limited
partnership agreements. Within weeks of commencing suit, the
plaintiffs filed notices of lis pendens in local recording
offices to warn prospective purchasers that title to the oil and
gas leases was in dispute and subject to the outcome of the
litigation.

The Danzig case was finally brought to trial in February
1980. In September 1980, the superior court filed its notice of

intended decision that the class was entitled to rescission and compensatory and punitive damages; judgment was entered against petitioner on January 2, 1981, for $6,742,994.[2]  To create a lien on his property, the plaintiffs (sometimes called the Danzig claimants) filed transcripts of the judgment in various counties in which petitioner owned real estate (judgment liens).

Shortly after the superior court issued its notice of intention, the plaintiffs discovered that petitioner had been transferring mineral interests to his wife since the trial in the Danzig case had ended.  In what they called a "consistent pattern of transfers" designed to make "enforcement of the California judgment extremely difficult", the plaintiffs motioned the superior court to amend its judgment to include Mrs. Grynberg, relieving the plaintiffs of the burden and expense of litigating fraudulent conveyance actions.  On February 4, 1981, the superior court granted the motion, nunc pro tunc, and entered judgment against Mrs. Grynberg for $6,322,546.

The Danzig case generated many motions and appeals in what had become a bitterly contested action.  On February 20, 1981, before the class members could collect on the judgment, the Grynbergs each filed a chapter 11 petition for reorganization in the U.S. Bankruptcy Court for the District of Colorado.  The

---

[2]Dollar amounts are rounded to the nearest dollar.

bankruptcy court granted the Grynbergs leave to proceed with their appeal of the superior court's judgment. That appeal, however, was ultimately unsuccessful: the California Court of Appeal affirmed the judgment, and the U.S. Supreme Court denied certiorari.

In his bankruptcy filings, petitioner listed his intrafamily transfers of mineral interests made in the preceding year and named the United States as a disputed creditor for gift taxes. Petitioner never filed Federal gift tax returns on these transfers, contending that they were not taxable gifts.[3]

Throughout the bankruptcy proceedings, the court observed many times that, although Mrs. Grynberg "claims an interest in the Lease, * * * [petitioner] also asserts a contingent beneficial interest in the Lease." In April 1982, the court approved a joint plan of reorganization and treated the couple's property as common assets from which all liabilities would be paid. The Danzig claimants eventually received the full amount of their judgment against the Grynbergs, plus accrued interest.

As required by law, the Grynbergs filed separate Federal income tax returns for calendar years 1981 and 1982, the years in which they were in bankruptcy. On their separate Schedules C attached thereto, they divided the income and expenses of JGA

---

[3]Petitioner now concedes that his assignments of overriding royalties to his children's trusts were completed gifts subject to tax.

equally, whether or not any asset was titled in the name of one or the other spouse.

The Mineral Leases

The nearly 600 mineral leases involved here, all of which petitioner acquired during marriage, covered lands located in Colorado, Michigan, Mississippi, Montana, North Dakota, Oklahoma, Utah, Wyoming, and in the community property States of Arizona and New Mexico. The leased lands were not in active production when petitioner assigned his leasehold or overriding royalty interests to Mrs. Grynberg. None of the properties was connected to a pipeline, and on only one or two had wells been drilled; hence, the properties' values, for the most part, were speculative.

Given the then-undeveloped state of the leases, petitioner feared that the Danzig claimants would seize them, sell them on foreclosure for nominal prices far below their supposed future values, and hold petitioner liable for the deficiency. In an effort to prevent such conduct and acting on his own initiative, petitioner launched his series of assignments to Mrs. Grynberg, which he duly recorded and for which she paid nothing. At his office, however, petitioner kept blank assignment forms bearing his wife's signature as assignor, permitting retransfer of the mineral interests to himself.

In the statutory notice, respondent treated petitioner's intrafamily transfers as gifts valued at $9,309,593. Before trial, the parties agreed to have an arbitration panel decide the value of these interests at the time of transfer, without regard to any encumbrances on the properties. The parties have called upon this Court to decide whether (and, if so, by how much) adverse claims of title would affect the panel's appraisals of value. The panel, made up of two partisan arbitrators who chose a third neutral one, fixed the unencumbered values of these interests at $1,455,914; i.e., the mineral leases transferred to Mrs. Grynberg were $1,404,902, the overriding royalties assigned to the children's trusts were $50,412, and the overriding royalties assigned to his wife were $600. Approximately 11 percent of the total value of mineral interests assigned was subject to judgment liens or lis pendens.

## OPINION

### The Spousal Assignments

The first issue is whether any of the transfers to Mrs. Grynberg were gifts giving rise to Federal gift taxes. We note that the transfers took place before the advent of the unlimited marital deduction under section 2523(a) (as amended and in effect currently).[4]

---

[4]The Economic Recovery Tax Act of 1981, Pub. L. 97-34, sec. 403(b)(1), 95 Stat. 172, 301, broadened the gift tax marital
(continued...)

Section 2501(a)(1) imposes a tax on individuals who directly or indirectly transfer property by gift. See sec. 2511(a). In order for the transfer to be complete, however, the donor must surrender dominion and control of the property. See Estate of Sanford v. Commissioner, 308 U.S. 39 (1939); Burnet v. Guggenheim, 288 U.S. 280 (1933); sec. 25.2511-2(b), Gift Tax Regs. In evaluating whether a donor has made a gift, we look to the "objective facts of the transfer and the circumstances under which it is made," sec. 25.2511-1(g)(1), Gift Tax Regs., bearing in mind that petitioner carries the burden of proof, see Rule 142(a).

Petitioner advances four arguments as to why he is not subject to gift taxes. He first claims that JGA, a joint venture, owned all the leases, such that neither spouse could have given them to anyone without the other's consent. He reasons further that, since the couple treated the mineral leases as jointly owned following his purported assignments, no gifts were made.

Petitioner's second argument rests on the premise that he and Mrs. Grynberg owned some of the mineral leases in community. He claims that he did not convert community into separate property when he assigned his one-half interest in the leases to

---

[4](...continued)
deduction to make interspousal transfers fully deductible, effective for tax years beginning after Dec. 31, 1981.

his wife, because both of them continuously held the properties jointly.

In any event, he argues next, Mrs. Grynberg's signature on blank assignment forms proves that he reserved the power to revoke the transfers at any time, rendering the conveyances incomplete for gift tax purposes. And, finally, petitioner alleges that, even if he gifted the properties, they had no realistic values because the Danzig case cast a cloud on title.

Respondent claims that, although petitioner intended by his actions to defraud the Danzig claimants, his act of executing and recording the assignments in Mrs. Grynberg's name, ipso facto, created gifts. In asserting that the evidence is insufficient to prove the existence of blank assignment forms, respondent concludes that petitioner relinquished his entire interest in the properties to his wife, and that, consequently, "[Mrs. Grynberg] could have done what she wanted with the leases and overrides."

Lastly, respondent maintains that the gross value of the mineral interests should not be reduced by any debt encumbering the properties because a "willing buyer with knowledge of relevant facts would know that the Danzig plaintiffs would not stand in the way of a purchase which would pay them full value". We reject respondent's contentions and hold that petitioner did not make gifts of mineral interests to his wife.

Often, State law affects the tax treatment of a transaction. See, e.g., <u>Morgan v. Commissioner</u>, 309 U.S. 78, 80 (1940) (State law creates legal rights in property, and Federal law controls the taxation of those rights); <u>Blair v. Commissioner</u>, 300 U.S. 5 (1937); <u>Bedford v. Commissioner</u>, 5 T.C. 726 (1945). Indeed, notwithstanding that petitioner acquired leases of Federal lands, we refer to State law in our analysis of whether he surrendered ownership of his interests. See <u>Wallis v. Pan Am. Petroleum Corp.</u>, 384 U.S. 63, 67 (1966) (applying State law in a dispute between private parties involving assignments of Federal oil and gas leases).

The mineral leases covered lands in 10 different States. Fortunately, the law of these States is substantially the same on the issues framed here. Under each State's law, a mineral lease is considered realty;[5] thus, under traditional choice of law principles, the law of the situs State governs questions of valid

---

[5]See <u>Arizona State Real Estate Dept. v. American Standard Gas & Oil Leasing Serv. Inc.</u>, 580 P.2d 15 (Ariz. Ct. App. 1978); <u>Hagood v. Heckers</u>, 513 P.2d 208 (Colo. 1973); <u>Jaenicke v. Davidson</u>, 287 N.W. 472 (Mich. 1939); <u>Bailey v. Federal Land Bank</u>, 40 So. 2d 173 (Miss. 1949); <u>Stokes v. Tutvet</u>, 328 P.2d 1096 (Mont. 1958); <u>State ex rel. Rausch v. Amerada Petroleum Corp.</u>, 49 N.W.2d 14 (N.D. 1951); <u>Bolack v. Hedges</u>, 240 P.2d 844 (N.M. 1952); <u>Harris v. Tucker</u>, 296 P. 397 (Okla. 1931); <u>Chase v. Morgan</u>, 339 P.2d 1019 (Utah 1959); <u>Hageman & Pond, Inc. v. Clark</u>, 238 P.2d 919 (Wyo. 1951).

Most States which classify a mineral lease as real property also treat an overriding royalty as an interest in land. See 2 Williams & Meyers, Oil and Gas Law, sec. 418.1, at 351 (1998).

property transfers.  See 2 Restatement, Conflict of Laws 2d, sec. 223 (1971).

When petitioner assigned his mineral interests to Mrs. Grynberg, fraudulent transfer statutes existed under prior enactments in all 10 States.  See, e.g., Colo. Rev. Stat. sec. 38-10-117 (1973) ("Every conveyance or assignment in writing * * * of any * * * interest in lands * * * made with the intent to hinder, delay, or defraud creditors or other persons of their lawful suits, damages, * * * debts, or demands * * * shall be void.").[6]  The object of these laws is to protect creditors by invalidating transfers that would otherwise render the debtors' assets unreachable.

The parties have stipulated that petitioner's sole purpose in making the transfers was to prevent the Danzig claimants from gaining possession of those assets.  As far as form of the transfers is concerned, it is true that they were effected by proper deeds; title to the mineral interests was, indeed, in Mrs. Grynberg's name.  Our concern, however, lies not with

---

[6]See also Ariz. Rev. Stat. sec. 44-1007 (1987) (repealed in 1990 and replaced with the Uniform Fraudulent Transfer Act (UFTA)); Mich. Comp. Laws sec. 566.221 (1979); Miss. Code Ann. sec. 15-3-3 (1972); Mont. Code Ann. sec. 31-2-314 (1989) (repealed in 1991 with adoption of UFTA); N.M. Stat. Ann. sec. 56-10-7 (Michie 1978) (repealed in 1989 with adoption of UFTA); N.D. Cent. Code sec. 13-01-05 (1981) (repealed in 1985 with adoption of UFTA); Okla. Stat. tit. 24, sec. 105 (1971) (repealed in 1986 with adoption of UFTA); Utah Code Ann. sec. 25-1-8 (1953) (repealed in 1988 with adoption of UFTA); Wyo. Stat. Ann. sec. 34-14-108 (Michie 1999).

"refinements of title", but with the realities of ownership. Corliss v. Bowers, 281 U.S. 376, 378 (1930); see also Heyen v. United States, 945 F.2d 359, 363 (10th Cir. 1991) ("[S]ubstance over form analysis applies to gift tax, as well as to income tax, cases."); Chanin v. United States, 183 Ct. Cl. 840, 393 F.2d 972, 978-980 (1968); Estate of Murphy v. Commissioner, T.C. Memo. 1990-472.

As judgment creditors, the Danzig claimants could have brought suits in all 10 States to have these transfers set aside. Instead, as an alternative remedy, they sought and obtained a money judgment against Mrs. Grynberg, the transferee. In so doing, the Danzig claimants suffered no harm from the conveyances; once more, they could look to the assigned properties as a source of payment. Hence, by relegating his creditors to Mrs. Grynberg for satisfaction of their claims against him, petitioner continued to enjoy the mineral interests. And, as we have noted above, Congress does not treat as taxable gifts transfers of property where the donor has not fully parted with his interest therein. See Estate of Sanford v. Commissioner, 308 U.S. at 43; sec. 25.2511-2(b), Gift Tax Regs.

This Court made a similar ruling in Paolozzi v. Commissioner, 23 T.C. 182 (1954). There, the taxpayer transferred property in trust, the income of which was distributable to her in the discretion of the trustees. Motivated by fear that the

Italian Government would seize her assets following her marriage to an Italian citizen, she created the trust to protect her property against confiscation. On a Federal gift tax return, she reported as a gift the value of the assets transferred less a retained life estate. The Commissioner determined that she made a gift of the entire trust fund since she reserved only an expectancy of income. We rejected the latter contention and held that the taxpayer properly deducted the value of a life estate because, under State law, her creditors could reach the maximum amount of the trust income. Reasoning that the taxpayer could borrow money and then relegate her creditors to the trust for repayment, we noted that she "[obtained] the enjoyment and economic benefit of the full amount of the trust income." Id. at 187.

The facts in this case require a similar conclusion. Under State law, the Danzig claimants had several options to recover the assets transferred. As their form of relief, they sought a money judgment against the transferee, permitting them to reach the mineral interests. Thus, like the taxpayer in Paolozzi v. Commissioner, supra, petitioner continued to enjoy those interests by forcing his creditors to look to the donee for settlement of their claims. In these circumstances, it is apparent that petitioner did not surrender such dominion and control over the properties as to result in taxable gifts.

Notwithstanding our belief that petitioner did not make gifts of mineral interests to his wife, we need not rest our opinion solely on that ground. Petitioner asserts, and we agree, that Mrs. Grynberg signed assignment forms in blank so that petitioner could revest himself with title to the mineral interests. At trial, respondent challenged the existence of such forms on the grounds that petitioner failed to mention them to a revenue agent during the audit process. This allegation, which calls into question petitioner's credibility, is unfounded. Petitioner, who appeared as a forthright and sincere witness, did his best to recall and describe events as they occurred and candidly acknowledged the occasional failure of memory. We are convinced that his testimony regarding the existence of blank assignment forms, as corroborated by three former employees of JGA, was truthful. Indeed, respondent offered no evidence that in any way contradicted petitioner's testimony.

Petitioner's decision to have Mrs. Grynberg sign assignment forms in blank is yet another manifestation of his control over the mineral interests. These forms, which gave petitioner power to divest his wife of the properties, rendered the transfers incomplete, for the law is settled that a gift, with power in the donor to revoke it, is not a gift subject to the gift tax. See Smith v. Shaughnessy, 318 U.S. 176 (1943); Estate of Sanford v. Commissioner, 308 U.S. 39 (1939); Burnet v. Guggenheim, 288 U.S.

280 (1933); Schwarzenbach v. Commissioner, 4 T.C. 179 (1944);

sec. 25.2511-2(c), Gift Tax Regs.  In light of our holding, we

decline to address petitioner's alternative arguments regarding

joint or community ownership of the mineral leases.

Gifts to Trusts

Petitioner concedes that he made completed gifts of over-

riding royalties to trusts for the benefit of his children.  The

parties disagree, however, on the value of those gifts.[7]  See

sec. 2512 ("If the gift is made in property, the value thereof at

the date of the gift shall be considered the amount of the

gift.").  Although an arbitration panel fixed the unencumbered

fair market value of these interests at $50,412, disagreement

continues over whether the amount of the gifts should be reduced

to reflect encumbrances on the underlying leases or petitioner's

involvement in the Danzig case.

Petitioner claims that the overrides had little or no value

when he transferred them to the trusts because he conveyed less

than a good and marketable title.  Respondent maintains that

petitioner made a gift of their gross value, or $50,412, with no

discount on account of the Danzig case or any judgment liens or

_____

[7]Generally, the standard of valuation for Federal gift tax
purposes is fair market value; i.e., the price at which property
would change hands between a willing buyer and a willing seller,
both having reasonable knowledge of relevant facts and neither
being compelled to trade.  See United States v. Cartwright, 411
U.S. 546, 550 (1973); sec. 25.2512-1, Gift Tax Regs.

lis pendens on the underlying leases.  To support his position, each party proffered the testimony of expert witnesses.

We will not, however, decide the value of the overrides for gift tax purposes.  In this case, any gift tax payable on petitioner's overriding royalty assignments would be fully absorbed by his unified credit, as petitioner made no taxable gifts prior to the ones he concedes here.[8]  Accordingly, whether the value of petitioner's gifts is $50,412, as respondent contends, or zero, as petitioner contends, the result is the same:  the deficiency as redetermined for the quarters in issue is zero.

Although the correct value of the overrides continues to divide the parties and may be the subject of future litigation, this issue has absolutely no impact on the years before us.  Our decision of no deficiency will be the same in any event.  Indeed, as the Court has previously noted:  "A decision of no deficiency * * * provides a complete victory for petitioner; a continuation of the proceedings 'cannot affect the result as to the thing in issue' * * * and can add nothing other than an advisory opinion".

---

[8]The Tax Reform Act of 1976, Pub. L. 94-455, sec. 2001(b)(3), 90 Stat. 1849, created the unified credit which applies directly against estate and gift taxes.  See secs. 2010(a), 2505(a).

The credit amount in 1980 was $42,500, offsetting $161,563 of taxable transfers.  See secs. 2001(c), 2502(a), 2505(b).  Under a phase-in schedule, the credit increased to $47,000 in 1981.  See sec. 2505(a) and (b).

LTV Corp. v. Commissioner, 64 T.C. 589, 595 (1975) (quoting California v. San Pablo & Tulare R.R. Co., 149 U.S. 308, 314 (1893)).

Accordingly, we conclude that petitioner is liable for no gift taxes on his transfers of overriding royalties to the children's trusts and that, moreover, he made no taxable gifts of mineral interests to his wife.  Our ruling renders moot respondent's determination that petitioner is liable for additions to tax under sections 6651(a)(1) and 6653(a).

To reflect the foregoing,

Decision will be entered for petitioner.