685 P.2d 757

**Gwendolyn HALL, a divorced woman; W.J. Spranger and Alta Marie Spranger, husband and wife, Clarence W. Siewert and Rose Zeena Siewert, husband and wife, Robert A. Celaya and Lucy L. Celaya, husband and wife, R.J. Gillespie and Una Gillespie, husband and wife, Charles Hall and Lois Hall, husband and wife, Darrel L. Lawson, a married man, Raymond J. Herst, a widower, Jacquelyn Herst, a single woman, on behalf of themselves and all other individuals similarly situated, Plaintiffs-Appellants,**

v.

**Cesar ROMERO and Jane Doe Romero, husband and wife, Defendants-Appellees.**

**No. 1 CA–CIV 5488.**

Court of Appeals of Arizona,
Division 1, Department B.

Feb. 23, 1984.

Reconsideration Denied April 16, 1984.

Review Denied July 17, 1984.

Russell Piccoli and O'Connor, Cavanagh, Anderson, Westover, Killingworth & Beshears by Larry L. Smith, Phoenix, for plaintiffs-appellants.

Gallagher & Kennedy by Michael L. Gallagher and J. Ruth Sproull, Phoenix, for defendants-appellees.

## OPINION

GREER, Judge.

This appeal stems from the trial court's grant of summary judgment for the defendant, a television and movie celebrity, against plaintiffs, buyers of certain real estate.

The relevant facts began in 1971, when Cesar Romero, a Hollywood personality, contracted with Consolidated Mortgage Company (Consolidated) to assist in promoting Consolidated's Arizona real estate venture, Chino Valley Estates. Romero agreed to make personal appearances at the property, to sign autographs, to greet prospective buyers, and to tape some television commercials. Under the terms of the contract, Consolidated had the right to use Romero's name in its promotional material. Romero was paid a flat monthly fee for his services. Consolidated used Romero's picture on a billboard and on a brochure, among other advertisements.

The named plaintiff-buyers bought their respective lots in 1972. At that time, the lots were minimally developed, Consolidated promising to improve them with underground utilities, a lake, paved roads, recreational facilities, and other amenities. The

record is silent regarding the date by which Consolidated specifically promised to complete the Chino Valley improvements; however, the evidence reveals that no improvements were made even by 1977.

In May, 1974, the Arizona Attorney General instituted a suit against Consolidated, on behalf of the purchasers of the Chino Valley lots, for Consolidated's failure to improve the lots as it had promised. Romero was not involved in this action. The attorney general informed Chino Valley buyers (including plaintiffs) of the suit in a letter dated November 8, 1974. The buyers were informed that the suit was settled, and that Consolidated had agreed to make the promised improvements within twenty-eight months. As of August, 1977, at the expiration of the twenty-eight months, Consolidated still had not made the promised improvements. Plaintiffs filed this action against Romero in February, 1978, alleging that Romero negligently misrepresented the viability and stability of the Chino Valley investment through his "association" with the project and through his lending his name for the project's promotion. Romero filed a motion for summary judgment, on the grounds that the plaintiffs' suit was barred by the statute of limitations, A.R.S. § 12–542, and that Romero owed no legal duty to the plaintiffs upon which he could be held liable. The trial judge found no genuine issue of material fact, and granted Romero's motion for summary judgment, without stating the basis for his ruling. Plaintiffs appealed.

Two issues are thus presented on appeal: First, whether plaintiffs' claim was barred by the statute of limitations; second, whether Romero owed some duty to plaintiffs, on which basis Romero could be held liable to them had he been in breach. We hold that plaintiffs' claim was barred by the statute of limitations. Thus, we need not reach the second issue.

## STATUTE OF LIMITATIONS

*Which statute of limitations applies?*

Plaintiffs recognize that the two-year statute, A.R.S. § 12–542(3), applies to ac-

tions "for trespass for injury done to the estate or the property of another." However, plaintiffs urge us to apply either the three-year statute, A.R.S. § 12–543, which applies to actions grounded in fraud; or the four-year general statute, A.R.S. § 12–550, which applies to actions to which no other statute applies.

■ We are aware of the principle that when there is substantial doubt as to which limitation period is applicable, the longer should be applied, *Sato v. Van Denburgh*, 123 Ariz. 225, 599 P.2d 181 (1979), however, we are not in substantial doubt. We hold that the two-year limitation provided by A.R.S. § 12–542 applies to this suit.

A.R.S. § 12–542 applies by its own terms to suits involving injury to property. Here, plaintiffs claim damages for "having spent substantial sums of money in purchasing lots which are virtually worthless," which clearly constitutes injury to their property. Additionally, A.R.S. § 12–542 applies to actions "sounding in negligence or tort." *See Sato v. Van Denburgh, supra.* Plaintiffs' theory of negligent misrepresentation falls within this category.

■ The general four-year limit of A.R.S. § 12–550 cannot apply because the two-year limit is prescribed for this type of action, as discussed above. Furthermore, A.R.S. § 12–543, the three-year provision for fraud claims, cannot apply for several reasons. We note that in plaintiffs' Third Amended Complaint, the only "representation" which plaintiffs attribute to Romero is the statement printed on a brochure, "I'm sure you'll never find a better, more secure investment." First, a representation of opinion will ordinarily not be regarded as a basis for actionable fraud. *Page Investment Co. v. Staley*, 105 Ariz. 562, 468 P.2d 589 (1970). The trial judge could have concluded that Romero's statement was merely an opinion. Second, actionable fraud cannot be predicated on unfulfilled promises, expressions of intention or statements concerning future events, unless such were made with the present intent not to perform. *Staheli v. Kauffman*, 122

Ariz. 380, 595 P.2d 172 (1979). Assuming Romero made statements about forthcoming improvements, the record lacks any evidence as to Romero's knowledge that Consolidated would not perform. Third, plaintiffs failed to plead the nine elements of fraud with particularity, as required by Rule 9(b), Ariz.Rules of Civil Procedure. We recognize that magic language is not necessary in pleading fraud, as long as the pleading, considered as a whole, can be construed to plead the nine elements. *Spudnuts, Inc. v. Lane*, 131 Ariz. 424, 641 P.2d 912 (App.1982). However, allegations that a defendant's actions are "fraudulent" are insufficient. *Id.*

■ Regarding the one statement which plaintiffs affirmatively attribute to Romero, plaintiffs fail to allege with particularity facts to show its falsity (i.e., that Romero was not sure they would find a better investment); its materiality; the buyers' ignorance of its falsity; their reliance on this statement, and their right to rely on this statement. Plaintiffs allege only that "because of Romero's various sales and promotional activities, and the esteem in which he was held," they purchased their lots and expected the improvements to be installed as promised. We hold that the plaintiffs' complaint fails to allege a cause of action for fraud.

■ Plaintiffs contend that the trial court erred in denying their motion to amend their Third Amended Complaint to allege fraud. We disagree. A motion for leave to amend the pleadings is within the sound discretion of the trial court, and we will not overturn that decision absent a clear abuse of discretion. *Matter of Estate of Torstenson*, 125 Ariz. 373, 609 P.2d 1073 (App.1980). Plaintiffs sought to amend their complaint after summary judgment had been entered against them. They had already amended their complaint twice. The plaintiffs' proffered "new" evidence, two pictures of Romero at Chino Valley Estates, did not tend to support their fraud allegation. Although courts are generally liberal in allowing amendments to pleadings, we hold that the trial judge did not

abuse his discretion in denying plaintiffs' motion.

*When did the Statute Begin to Run?*

■ The two-year statute of limitations begins to run when the plaintiff knows or should have known of the defendant's negligent conduct, or when the plaintiff is first able to sue. *Sato v. Van Denburgh*, 123 Ariz. 225, 599 P.2d 181 (1979). In order to determine when the Chino Valley buyers knew of Romero's alleged misrepresentations, we first must assume that Romero made representations as to improvements, and second, that those representations became "negligent misrepresentations" when it became obvious that Consolidated was not going to improve the lots in the time and manner promised. Thus, the running of the statute of limitations against Romero is initially conditioned upon the point at which Consolidated failed to perform. After deciding when Consolidated failed to perform, we must then determine when plaintiffs knew or should have known of that failure, and thus, that Romero's representations as to improvements were not true.

■ The record before us fails to evidence a clear-cut oral or written promise to the plaintiffs that their improvements would be completed within a definite period of time. However, the following pertinent facts indicate when Consolidated failed to perform, and when plaintiffs knew of that failure.

1. Plaintiffs rely on a Chino Valley Estates brochure to show Romero's misrepresentations. That brochure advised:

An additional clubhouse and recreation area is planned and scheduled for completion by the end of 1972, with a large lake for swimming and fishing to be completed before the end of 1973.

2. Plaintiffs also rely on the Winter, 1972 edition of "Chino Valley Newsy Notes" to support their claim. That newsletter promised:

Chino Valley Estates will provide a one acre recreation center with a large swim-

ming pool, horseshoes and a large community center which will be completed in 1972.

3. From their answers to interrogatories, the plaintiffs Siewerts indicated they were told "utilities would be completed in six months to a year ...."

4. From their answers to interrogatories, the plaintiffs Irwins were informed utilities would be completed "within a year or two."

5. From their answers to interrogatories, the plaintiffs Sprangers were told "utilities were to be completed sometime in 1973."

6. Six of seven named plaintiffs visited the property after purchasing it; five of the six who visited did so at least once a year beginning in 1972, the sixth visited twice in 1972 and once in 1975.

7. The attorney general sued Consolidated in May, 1974, for failing to install the promised improvements.

8. On August 5, 1974, plaintiff Spranger sent a complaint to the Assistant Arizona Attorney General, Consumer Protection and Antitrust Division. It stated: "With all the grief we have had concerning said lots; nothing but return of money could give us peace of mind ... We tried to list [our lot] with a Real estate lady in Chino Valley but she said 'it was doubtful she could sell it ... the developers had not carried through on any developments.'"

9. On November 5, 1974, plaintiffs Hersts complained to Consolidated, stating they were voiding their agreement, after they received a letter from the Department of Housing and Urban Development, dated October 29, 1974, informing Chino Valley purchasers that Consolidated had violated the Land Sales Full Disclosure Act.

10. The attorney general sent a letter to Chino Valley buyers, including plaintiffs, dated November 8, 1974, which explained the nature of his suit against Consolidated and advised: "Before making any decision in this matter, I urge you to contact an attorney and present him with all the facts."

11. On December 19, 1975, plaintiff Gwen Hall, who visited the property in 1972 and 1975, complained to the attorney general regarding improvements not made as of November, 1975.

The foregoing facts indicate that Consolidated promised completed improvements by the end of 1973, and broke its promise regarding the improvements at least by May, 1974, as evidenced by the attorney general's suit. At the end of 1974, the attorney general advised the plaintiffs that Consolidated had not fulfilled its promises. Although the November 8, 1974 letter informed plaintiffs of a settlement with Consolidated, it said nothing about Romero, and it advised the buyers to seek the advice of an attorney on this matter. At this point, plaintiffs should have been aware of their possible cause of action against Romero. Indeed, by this time, at least two plaintiffs had already complained to the attorney general that Consolidated had broken its promises to improve the lots, which had been made two to three years prior. Even as to those plaintiffs who did not specifically complain by that time, all but one had visited the property in 1972, 1973, and 1974. In his deposition, plaintiff Charles D. Hall stated that he saw no improvements during those visits. The undisputed facts lead to the conclusion that plaintiffs knew, or reasonably should have known, of their possible claim against Romero by November, 1974; thus, the statute of limitations began to run against Romero at that time.

Plaintiffs cite *Martinez-Ferrer v. Richardson-Merrell, Inc.*, 164 Cal.Rptr. 591, 105 Cal.App.3d 316 (1980) for the proposition that they could not have had a cause of action against Romero until after Consolidated failed to comply with the attorney general's settlement. In *Martinez-Ferrer*, the plaintiff developed eye problems in 1960 after having taken a prescription drug. He did not sue the manufacturer then because his problems were not permanent, and he "saw no point." In 1976, plaintiff developed cataracts as a result of his having taken the drug. Plaintiff sued

the manufacturer in 1976. The trial court granted defendant's motion for summary judgment, holding that the plaintiff's action was barred by the statute of limitations. The court of appeals reversed on the ground that the evidence failed to show that plaintiff's 1960 eye problems were caused by the drug; therefore, plaintiff had no cause of action against the manufacturer in 1960, and the statute of limitations could not have started to run at that time. That case is factually distinguishable from the one at bar. In *Martinez-Ferrer,* the record lacked any evidence to show that the plaintiff could have sued the manufacturer in 1960. In the case at bar, the record is clear that certainly by November, 1974, plaintiffs had a cause of action because Consolidated failed to make the improvements it had promised would be completed "in a year or two." The fact that Consolidated promised to perform in the future does not eradicate the fact that as of May, 1974, Consolidated had already broken its promise to perform, and that plaintiffs were aware of that broken promise by November, 1974. Thus, whereas the plaintiff in *Martinez-Ferrer* had no cause of action against the manufacturer in 1960, for a lack of proof that the manufacturer caused his eye problems, plaintiffs here had their cause of action at the end of 1974; that they failed to sue Romero because they placed blind faith in Consolidated's promises, already proven untrustworthy, cannot prevent the statute of limitations from running.

*Was the Statute Tolled?*

 Plaintiffs contend that if the statute of limitations began to run before August, 1977, it was equitably tolled as to defendant Romero, because the plaintiffs relied on the attorney general's settlement of the suit against Consolidated, which settlement provided that the promised improvements would be made by August, 1977. In essence, the plaintiffs argue that they failed to sue Romero earlier than February, 1978, because they expected their improvements to be forthcoming as a result of the attorney general's settlement with *Consolidated;* therefore, *Romero*

should be estopped from relying on the defense of statute of limitations. We disagree. An essential element of estoppel is conduct by the party to be estopped by which he intentionally or through culpable negligence induces another to believe and have confidence in certain material facts. *Joy Enterprises, Inc. v. Reppel,* 112 Ariz. 42, 537 P.2d 591 (1975). In this case Romero did nothing to induce plaintiffs to forego suing him. The very purpose of enacting a statute of limitations is to fix a limit within which an action must be brought and to prevent the unexpected enforcement of stale claims against persons who have been thrown off their guard by want of prosecution. *See Jackson v. American Credit Bureau,* 23 Ariz.App. 199, 531 P.2d 932 (App. 1975). Romero is precisely the type of party who is entitled to rely upon the protection of the statute of limitations.

Plaintiffs' reliance upon *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971), to support their tolling argument is misplaced. *Zenith* involved the interpretation of 15 U.S.C. § 16(b), which provides specifically for the suspension of the running of the statute of limitations for private rights of action during the pendency of an antitrust suit by the United States. *Zenith* did not create a common law tolling rule.

Plaintiffs also urge us to toll the statute of limitations pursuant to a class action tolling rule enunciated in *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). That rule provides that commencement of a class action tolls the applicable statute of limitations for individual suits, as to all members of the class, until the class is certified. The rule presupposes that the defendant is identical in both the class action suit and the individual class members' suits. This presupposition would prevent us from applying the rule, even if we were to accept plaintiffs' characterization of the attorney general's suit as one for the benefit of a "class."

Finally, plaintiffs argue that material issues of fact exist as to which statute of limitations applies, when the cause of action accrued, and the reasonableness of plaintiffs' failure to sue Romero pending outcome of the attorney general's suit. First, the decision of which statute of limitations applies is a matter of law. Second, the essential facts in this case are not in dispute, those facts having been outlined above. Given those undisputed facts, plaintiffs' cause of action accrued no later than November, 1974. Third, since no tolling rule is available to suspend the statute from running, plaintiffs' reasonableness in failing to sue Romero is not at issue.

For the foregoing reasons, we hold that plaintiffs' action was barred by the statute of limitations, and the trial judge did not err in entering summary judgment for defendant Romero. We therefore do not reach plaintiffs' other contentions on appeal.

Affirmed.

MEYERSON, P.J., and FROEB, J., concur.