726 P.2d 215

**STATE of Arizona, ex rel. Robert K. CORBIN, Attorney General, and the Arizona Corporation Commission, Plaintiffs/Appellees,**

v.

**Jack GOODRICH, Defendant/Appellant.**

**No. 2 CA–CIV 5695.**

Court of Appeals of Arizona,
Division 2, Department B.

May 2, 1986.

Review Denied Sept. 23, 1986.

Robert K. Corbin, Atty. Gen. by Patrick M. Murphy and W. Mark Sendrow, Phoenix, for plaintiffs/appellees.

Snyder and Robens, P.C. by Howard M. Snyder, Phoenix, for defendant/appellant.

LACAGNINA, Judge.

Jack Goodrich appeals an order granting a preliminary injunction pursuant to A.R.S. § 12–2101(F). The State of Arizona and the Corporation Commission filed a complaint alleging violations of the Arizona Security Act, A.R.S. §§ 44–1801 through 44–2066.11, and the Arizona Consumer Fraud Act, A.R.S. §§ 44–1521 through 44–

1567, by the conduct of Goodrich and Precious Metals International of Arizona, Inc. and Precious Metals International, Inc. (PMI) offering and selling unregistered securities through unregistered dealers and salespersons within and from the State of Arizona. Following nine days of testimony on the state's application for preliminary injunction, the court made findings of fact and conclusions of law and entered its order granting the injunction.

Goodrich presents numerous issues on appeal including certain constitutional claims, the construction of certain provisions of the Consumer Fraud Act and Securities Act as applied to them, the extent of the court's jurisdiction over the parties and over acts committed outside this state, the extent of the court's discretion in ruling on a requested continuance, matters concerning the injunction itself and the admissibility of certain evidence.

## CONSTITUTIONAL CLAIMS

**A. The Arizona Corporation Commission has Authority to Regulate the Offer and Sale of Securities.**

■ The Commission has constitutional authority to inspect and investigate corporations whose stock is offered for sale to the public. Ariz. Const. art. 15, § 4. Stocks are included in the definition of securities, A.R.S. § 44–1801(16) and, therefore, the commission has constitutional authority to regulate the sale of securities. *See Commercial Life Insurance Co. v. Wright,* 64 Ariz. 129, 140, 166 P.2d 943, 950 (1946); *State, ex rel. Bullard v. Jones,* 15 Ariz. 215, 226, 137 P. 544, 549 (1914). The trial court concluded that the offer and sale of gold and silver by Goodrich and PMI in the form of commodity investment contracts constituted the offer and sale of securities under A.R.S. § 44–1801(16). The legislature, by enacting the Securities Act, acknowledged the commissioner's authority to regulate the sale of securities. We find the commission acted within its constitutional authority in this case.

## B. The Arizona Securities Act Does Not Violate the Commerce Clause.

■ Congress has the power to regulate commerce among the several states by virtue of the United States Constitution, art. I, § 8, clause 3. The test for determining whether a regulation (in this case, defendants allege the Arizona Securities Act) places an unreasonable burden on interstate commerce in violation of the commerce clause depends upon whether the burden imposed on interstate commerce is excessive in relation to the local interest served by the statute or regulation in question. United States Constitution, art. VI; *Pike v. Bruce Church*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). The state, as an exercise of its police power, seeks to regulate the conduct of persons residing within Arizona and using this state as a base for securities operations. Arizona has a legitimate interest in regulating the conduct of Arizona residents engaged in the offer and sale of securities even though those ultimately victimized may not be Arizona residents. *See State, ex rel. Corbin v. Pickrell*, 136 Ariz. 589, 667 P.2d 1304 (1983); *Arizona State Real Estate Department v. American Standard Gas*, 119 Ariz. 183, 186–187, 580 P.2d 15, 18–19 (1978). The Arizona Securities Act does not impose an excessive burden.

Nor does *Polaris Interm. Metals v. Ariz. Corp. Comm.*, 133 Ariz. 500, 652 P.2d 1023 (1982), require a different result. We agree with the supreme court that if the statute sought to regulate the sale of securities outside Arizona, it would conflict with the commerce clause and would be unconstitutional. *Id.* at 505, 652 P.2d at 1028. That is not the case here. The statute seeks to regulate offers and/or sales occurring in Arizona, and we find that the state has a legitimate interest in regulating offers and sales from within Arizona to residents of other states, as well as offers made to Arizona residents. *See State, ex rel. Corbin v. Pickrell, supra.*

■ Finally, applying the Securities Act to defendants in this case, we find the state "clearly rests on sure footing" to the extent that it forbids this fraudulent conduct, and that their transactions were "not the legitimate subject of trade or commerce, nor within the protection of the commerce clause of the constitution." *Pike v. Bruce Church*, 397 U.S. at 143–44, 90 S.Ct. at 848.

## C. The State has Standing to Enforce the Securities Act and Consumer Fraud Act.

■ The Attorney General and the Arizona Corporation Commission are authorized by statute to enforce the state's consumer protection laws and the securities act respectively. *See* A.R.S. §§ 44–1528 and 44–2032. In addition, the Attorney General is authorized by statute to represent the Securities Division of the Commission in actions brought under the provisions of A.R.S. § 44–1801. A.R.S. § 41–192(E). Finally, the joinder of the two actions is permissible, the Consumer Fraud Act being a cumulative remedy. *See* A.R.S. § 44–1533(A); *State, ex rel. Corbin v. Pickrell, supra; Madson v. Western American Mortgage Company*, 143 Ariz. 614, 694 P.2d 1228 (App.1985).

## D. The Consumer Fraud Act Does Not Violate the Arizona Constitution.

■ Article IV, part 2, § 13, of the Arizona Constitution requires the following: "Every act shall embrace but one subject and matters properly connected therewith which subject shall be expressed in the title...." The purpose of the constitutional provision is to allow notice of what subjects are included within the act in order to avoid surprise. *Industrial Development Authority of Pinal County v. Nelson*, 109 Ariz. 368, 509 P.2d 705 (1973). "Any provision having a natural connection with the title of the act is properly embraced in the act." *White v. Kaibab Road Improvement District*, 113 Ariz. 209, 211, 550 P.2d 80, 82 (1976), citing *Taylor v. Frohmiller*, 52 Ariz. 211, 79 P.2d 961 (1938). The broad legislation under the Consumer Fraud Act includes those subjects related to trade and commerce. We find the unlawful practices provision of that act is connected to trade

and commerce and fulfills the purpose of the above constitutional provision. *See State, ex rel. Corbin, supra.*

## STATUTORY CLAIMS

### A. PMI and Goodrich Offered and Sold Commodity Investment Contracts.

 Included in the definition of a security is a commodity investment contract. A.R.S. § 44–1801(16). The statute further defines a commodity investment contract as "a contract for the sale or purchase of a commodity which does not require the delivery to the purchaser of such commodity within twenty-eight calendar days from payment of any portion of the purchase price." A.R.S. § 44–1801(3). Gold and silver are commodities "whenever bought and sold upon the basis of the public market quotation of prices made on any board of trade or exchange upon which commodities or commodity investment contracts are dealt...." A.R.S. § 44–1801(2). PMI sold gold and silver contracts with a 30% down payment and a deferred delivery date not requiring delivery before one year and a day of purchase. The evidence at the hearing showed PMI's sales price was based on public market quotations of prices made on boards of trade and exchange which dealt in commodities and commodity investment contracts including Comex and New York Metals Exchange. That a particular selling price exceeded or was less than public market quotations, based on PMI's administrative costs and commissions, does not change the bases for their quotations. The statute does not require proof that PMI itself is a board of trade or an exchange.

### B. The State Alleges Securities Fraud with Sufficient Particularity.

 The state in its complaint names four specific defendants including two corporate officers and two separate corporations, and alleges defendants' conduct with their investors, including representations made to the investors concerning their contracts. Additionally, the state alleged the following:

Defendants, directly or indirectly, through prospectuses, offering materials and/or oral statements of sales agents, omit to state material facts to offerees and purchasers concerning the precious metals investments which they offer, including but not limited to the following:

a. That telephone salesmen hired by Defendants have little or no training or expertise in the commodities markets upon which to base predictions of future gold and silver price fluctuations;

b. The financial condition or business history of Defendants PRECIOUS METALS INTERNATIONAL OF ARIZONA, INC. and PRECIOUS METALS INTERNATIONAL, INC.;

c. Information concerning the officers and/or directors of Defendants PRECIOUS METALS INTERNATIONAL OF ARIZONA, INC. and PRECIOUS METALS INTERNATIONAL, INC. or the business backgrounds and experience of said persons in commodities investments;

d. That a Cease and Desist Order was issued on November 1, 1982 by the Securities Division of the Iowa Insurance Department, against Defendant JACK GOODRICH, in the matter of U.S. Western Oil & Gas Corp. which involved the sale of unregistered securities and fraud in the offer and sale of securities.

e. Failed to disclose to purchasers the location where purchaser's gold or silver would be stored.

In addition, the state filed with the complaint a supporting memorandum of points and authorities to which 10 exhibits were appended. These included copies of the following:

1. Customer account agreement;

2. Certificates of non-registration of PMI and Jack Goodrich;

3. Affidavits from three prospective investors;

4. Affidavit from FBI special undercover agent with PMI sales "training package" he received;

5. Iowa Cease and Desist Order; and

6. Affidavit of Securities Division CPA about the investigation of PMI's bank accounts.

We find the state complied with the requirements of Rule 9(b), Rules of Civil Procedure, 16 A.R.S., stating "the circumstances constituting fraud" with particularity and alleging more than bare allegations of fraud. *See Hall v. Romero*, 141 Ariz. 120, 685 P.2d 757 (App.1984).

### C. The Consumer Fraud Act Permits the Court to Enjoin Unlawful Practices Which Include Material Omissions in Securities Violations.

An unlawful practice is defined as "[t]he act, use or employment by any person or any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby...." A.R.S. § 44–1522(A). PMI failed to disclose the lack of expertise of its sales staff and certain background information of its corporate officers (including a previous cease and desist order against Goodrich, previous administrative orders and one conviction). Those were material and relevant facts which the investors were entitled to know prior to entering into the contracts. The investors were under no duty to seek this information. *Resort Car Rental System, Inc. v. FTC*, 518 F.2d 962 (9th Cir.), *cert. denied*, 423 U.S. 827, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975). In addition, the investors were entitled to know that PMI, contrary to its representation that the invested silver was being stored, had never purchased the metals. Such representations were misleading. *See Madson v. Western American Mortgage Co., supra.*

### JURISDICTIONAL ISSUES

### A. Arizona Court Has Jurisdiction Over Business Contracts Occurring Within the State.

The Consumer Fraud Act applies to acts committed within Arizona in violation of its provisions. Victims need not be Arizona residents in order for the state to enforce its statutes against a person or persons conducting business within the state. Arizona has the legitimate interest in insuring that local business is conducted honestly. *Sligh v. Kirkwood*, 237 U.S. 52, 35 S.Ct. 501, 59 L.Ed. 835 (1915); *State, ex rel. Corbin v. Pickrell, supra; Arizona Real Estate Department v. American Standard Gas, supra.*

The Arizona court has jurisdiction over offers made by PMI–Mich from its office in Michigan. The offers to sell securities to Arizona residents, through telephone solicitations and written offers constitute conduct within the registration and licensing requirements of A.R.S. §§ 44–1841 and 44–1842. The application of securities laws against persons soliciting from outside the state does not violate due process. *See Martin v. Steubner*, 652 F.2d 652 (6th Cir.1981), *cert. denied*, 454 U.S. 1148, 102 S.Ct. 1013, 71 L.Ed. 302 (1982); *Green v. Weis Voison Carmon, Inc.*, 479 F.2d 462 (7th Cir.1973). The state, in regulating securities and exercising its police power, need not meet the minimum contacts requirements which apply to disputes between private parties. In any case, the minimum contact requirements were met in this case. *See McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *G.T. Helicopters, Inc. v. Helicopters, Ltd.*, 135 Ariz. 380, 661 P.2d 230 (App.1983).

Finally, the trial court found that there existed "a relationship, joint venture in combination among various PMI offices." This is sufficient foundation for its injunction against each of the PMI offices. For any of the above-mentioned reasons, the Arizona courts had constitutional au-

thority to regulate the transactions in this case.

## CLAIMS OF TRIAL COURT ERROR

### A. Discretionary Rulings.

■ The trial court properly exercised its discretion by refusing to continue the permanent injunction hearing. Defendants' motion for a continuance had been filed on the day the hearing was to commence. Defendants had prior notice of the hearing. In addition, the corporate records were made available to defendants for investigation, they had a three-week recess which allowed them an opportunity to examine the records, and they had an additional opportunity to call witnesses for cross-examination. Neither Goodrich nor PMI made any showing of prejudice by the court's initial denial of a continuance. We find no abuse of discretion. *See* Rule 42(c), Rules of Civil Procedure, 16 A.R.S.; *Daru v. Martin,* 89 Ariz. 373, 363 P.2d 61 (1961).

■ In addition, there is support in the record for the trial court's Finding of Fact No. 18 which states: "The court believes and notes that the defendants did not seek out or offer the purchase of silver to industrial or commercial users of silver nor persons of sophistication. Rather, the targets of the defendants' sales efforts were in the main persons who were without special knowledge of precious metals." The testimony and documentary evidence supports this finding specifically. PMI's telephone sales script assumes no knowledge of the silver market on the part of the person receiving the call.

The trial court's findings of fact are conclusive and binding on this court unless they are clearly erroneous or unsupported by any credible evidence in the record. Rule 52(a), Rules of Civil Procedure, 16 A.R.S.; *Donahue v. Marston,* 26 Ariz.App. 187, 547 P.2d 39 (1976); *Wilson v. Tucson General Hospital,* 18 Ariz.App. 31, 499 P.2d 762 (1972); *Bevins v. Dickson Electronics Corp.,* 16 Ariz.App. 105, 491 P.2d 494 (1972); *Marquess v. Spaner,* 15 Ariz. App. 342, 488 P.2d 698 (1971). The court's

Finding No. 18 was supported by the evidence.

■ The trial court properly denied defendants' request for a stay of the injunction proceedings. They had claimed that the fear of criminal prosecution was so great that they could not present a defense. First, the record did not support their claim. Second, nothing prohibits simultaneous maintenance of criminal and civil actions. *United States v. Kordell,* 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970). The state had a legitimate interest in pursuing the civil action and seeking to enjoin any further violations of Arizona securities laws in order to protect its residents. *See SEC v. First Financial Group of Texas,* 659 F.2d 660, 667 (5th Cir.1981).

### B. The Injunction.

Our scope of review of the trial court's preliminary injunction order is limited. We must affirm that order if there is substantial evidence to support the injunction. *Gillespie Land and Irrigation Company v. Gonzales,* 93 Ariz. 152, 379 P.2d 135 (1963). We will sustain the trial court's exercise of its discretion absent a clear showing of abuse of that discretion. *American Credit Bureau, Inc. v. Carter,* 11 Ariz.App. 145, 462 P.2d 838 (1969).

■ We do not agree with defendants' arguments that the trial court abused its discretion in granting a preliminary injunction against Goodrich individually. In addition, we disagree that the injunctive remedies provided in the order were inappropriate in this case. Counsel for Goodrich argues without supporting affidavits from Goodrich himself that Goodrich had no intention of violating Arizona law and does not intend to do so in the future. Such promises, even if supported by Goodrich's own statements, do not affect the power of the court to grant injunctive relief. *See United States v. W.T. Grant Company,* 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); *United States v. Oregon State Medical Society,* 343 U.S. 326, 72 S.Ct. 690, 96 L.Ed. 978 (1952). In addi-

tion, this court need not consider such promises. *SEC v. Murphy,* 626 F.2d 633, 656 (9th Cir.1980). The trial court could properly infer the likelihood of future violations by considering the amount of investor money received by defendants (over $248,000 during a six-month period), the repeated violations during that period (estimates of over 90 deferred delivery contracts), Goodrich's intent (lack of disclosure of the Iowa cease and desist order) and defendants' own conduct (lack of affidavit from Goodrich and failure to admit wrongdoing). *See, e.g., SEC v. Youmans,* 729 F.2d 413, 415 (6th Cir.1984), *reversed on other grounds,* 729 F.2d 413. This is not a case where "events make it absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *State, ex rel. Babbitt v. Goodyear Tire,* 128 Ariz. 483, 486, 626 P.2d 1115, 1118 (App.1981). The trial court could reasonably conclude that Goodrich's telephone and mail solicitation was likely to continue. There is no evidence of mootness.

■ The Commission applied for injunctive relief against Goodrich and PMI pursuant to A.R.S. § 44–2032(2) in order to restrain them from "engaging in such act, practice or transaction or in doing any act in furtherance" of the violation. In defining any act in furtherance of the violation, the trial court in this case looked to A.R.S. § 44–1991 which prohibits anyone from omitting "to state any material fact necessary in order to make the statements made in light of the circumstances" not misleading. The court in its findings of fact concluded the following:

40. In connection with the offer and sale of their merchandise and commodity investments contracts in gold and silver within and from the State of Arizona, PMI-Arizona and PMI-Michigan through their prospectuses, offering materials and/or oral statements of their agents/salesmen, including Goodrich, have omitted to state material facts to offerees and purchasers including, but not limited to, the following:

(a) That telephone salesmen hired by defendants have little or no training or expertise in the commodities market upon which to base predictions of future gold and silver price fluctuations;

(b) Information concerning the financial condition and business history of defendants PMI-Arizona and PMI-Michigan;

(c) Information concerning the officers and directors of defendants PMI-Arizona and PMI-Michigan or the business backgrounds and experience of said persons in commodities investments;

(d) That a Cease and Desist Order was issued on November 1, 1982 by the Securities Division of the Iowa Insurance Department, against Defendant Goodrich, in the matter of U.S. Western Oil & Gas Corp., which involved the sale of unregistered securities and fraud in the offer and sale of securities;

(e) Failed to disclose to investors the location where their gold and silver is stored.

(f) That the President of PMI-Arizona, Neal, plead guilty to and was convicted of Attempted Embezzlement by a Public Official in the State of Michigan in April, 1980.

(g) That Cease and Desist Orders have been issued against related companies, principals and officers of PMI-Arizona and PMI-Michigan by the states of Minnesota, Iowa, Missouri and Massachusetts.

■ The trial court in its Conclusion of Law No. 2 found that defendants offered and sold securities required to be registered under A.R.S. §§ 44–1891 through 1900. Section 44–1894 requires a securities prospectus to disclose, among other things, the business of the insurer and the background of the officers and directors. The court determined that PMI and Goodrich had omitted these material facts. Under the circumstances we find these would have been facts important to an investor's decision. *Little v. Valley National Bank of Arizona,* 650 F.2d 218, 222 (9th Cir. 1981); *Rose v. Dobras,* 128 Ariz. 209, 624

P.2d 887 (App.1981). As issuers of a security, defendants were required to disclose those material facts listed in the court's finding. The order is not overly broad or incapable of enforcement.

### C. Documents Seized at Corporate Office.

 Defendants argue that certain exhibits were improperly admitted into evidence over objection, some as business records and others as admissions. We have reviewed the record of counsel's arguments concerning the admissibility of these exhibits. We hold they were properly authenticated under Rule 901(a), Rules of Evidence, 17A A.R.S., and A.R.S. § 12–2262(B). Officer Santa Cruz, who seized the documents pursuant to a valid search warrant connected with a separate criminal investigation, testified as to the chain of custody of the records. He also testified that as a part of the seizure of the documents, he was accompanied by Karen Klinsky, Assistant Manager of PMI through the corporate business office, and she explained each of the documents to him. In addition, he personally testified as to the location of the documents. Klinsky was available for cross-examination by the defendants during the hearing. In addition, the court allowed a three week recess, giving the defendants an opportunity to inspect the seized records and prepare a defense. Finally, each of the exhibits was admitted not only on authentication of the particular document but also as corroborated by previously admitted items of evidence. Client index cards and sales records were corroborated by previously admitted cancelled checks evidencing those accounts. Two PMI memoranda and two Executive Control Corporation memoranda were corroborated by previously admitted evidence and were admitted as admissions by defendants. We find proper foundation through identification and chain of custody testimony and that the evidence was properly admitted. *See* Rule 803(6), Rules of Evidence, 17A A.R.S.; *State v. Ashelman,* 137 Ariz. 460, 671 P.2d 901 (1983).

Affirmed.

LIVERMORE, P.J., and BIRDSALL, J., concur.