NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

---

C. DOUGLAS WEBER, et al.,
*Plaintiffs/Appellants*,

*v.*

GABRIEL V. KORY, et al.,
*Defendants/Appellees*.

No. 1 CA-CV 24-0215

FILED 04-17-2025

---

Appeal from the Superior Court in Maricopa County
No. CV2022-000241
The Honorable Dewain D. Fox, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

---

COUNSEL

Poli, Moon & Zane, PLLC, Phoenix
By Michael N. Poli, Lawrence R. Moon
*Counsel for Plaintiffs/Appellants*

Quarles & Brady LLP, Phoenix
By John M. O'Neal, Alexander H. Park
*Counsel for Defendants/Appellees*

---

## MEMORANDUM DECISION

Chief Judge David B. Gass delivered the decision of the court, in which Presiding Judge Brian Y. Furuya and Vice Chief Judge Randall M. Howe joined.

---

**G A S S**, Chief Judge:

**¶1**        In 2010, 3 law partners formed an LLC to hold a commercial property on Portland Street in Phoenix for use as their law firm's office. Appellant C. Douglas Weber and the 2 appellees, Gabriel V. Kory and Jeffrey B. Miller, were those 3 people. Though the law firm never entered into any formal agreements with the LLC, the law firm used the Portland Street property for its office and paid the LLC all expenses related to it until January 2020.

**¶2**        This appeal arises because in 2019, Weber left the law firm. The LLC was in discussions with a developer to sell the Portland Street property. Appellees then formed a second LLC with a different third law firm partner. Appellees used that second LLC to purchase a commercial property on Third Avenue in Phoenix for the law firm to use as office space. In January 2020, the law firm moved its offices to the Third Avenue property and stopped making payments to the first LLC. All might have been fine, but in late 2019, the deal to sell the Portland Street property fell through. Even so, all was not lost. The first LLC eventually sold the Portland Street property and split the profits between Weber, Kory, and Miller. But the first LLC had no tenant and no income in the interim.

**¶3**        Weber sued appellees, alleging they breached their common-law fiduciary duty to the first LLC, the express terms of the first LLC's operating agreement, and the duty of good faith and fair dealing implied in the operating agreement. The superior court granted appellees' summary judgment motion on all claims and awarded appellees their attorney fees and costs. Weber appealed.

**¶4**        We affirm in part, vacate in part, and remand to the superior court. We affirm the superior court's ruling in appellees' favor on the fiduciary duty claim. We vacate and remand for further proceedings on Weber's contract and good faith claims. We also vacate the superior court's

award of attorney fees and costs pending final resolution of the remaining claims on remand.

## FACTUAL HISTORY

I.      **In November 2010, Weber and the 2 appellees formed the first LLC to hold a property their 3-partner law firm used as an office until January 2020.**

¶5          Weber and each appellee owned an equal, one-third interest in the first LLC. In 2010, the first LLC bought a commercial property on Portland Street. Section 8.5 of the first LLC's operating agreement reads, "Duality of Interest Transaction. Members of this Company have a duty of undivided loyalty to this Company in all matters affecting this Company's interests."

¶6          The law firm and the first LLC never entered into any lease or agreement. Despite the absence of a contractual relationship, the law firm paid the first LLC about $7,650 a month plus additional maintenance expenses. The law firm used the Portland Street property as its office until January 2020.

II.     **In 2019, the first LLC decided to sell the Portland Street property and ultimately sold it, splitting the profits amongst each other.**

¶7          In early 2019, a developer expressed interest in purchasing the Portland Street property. In September 2019, the developer sent a letter of interest to the first LLC, naming Weber and appellees collectively as the seller. Though Weber allowed appellees to take the lead in negotiations for the first LLC, Weber and appellees all agreed to sell. Because the developer did not want the law firm as its tenant, the law firm began to search for alternative office space.

¶8          Up until early December 2019, the developer and the first LLC were discussing the sale of the Portland Street property and identified a potential closing date of January 6, 2020, but the deal fell through. Over the next 2 years, the first LLC sold the Portland Street property parcel-by-parcel and the 3 members (Weber and appellees) divided the profits.

**III.    By early November 2019, Weber knew appellees were working to secure alternative office space so the law firm could vacate the Portland Street property and leave the first LLC without a source of income.**

¶9          During the fall of 2019, Weber knew the law firm was looking to move. As of November 5, 2019, Weber knew, as he himself said, appellees' plans would cause the first LLC to "lose [the] rental income" from the law firm. Weber also knew appellees had arranged for the purchase of the Third Avenue property to use the law firm's office. Weber understood appellees' efforts were directed at having the law firm vacate the Portland Street property and lease the Third Avenue property instead. And as he himself said, the ultimate result of appellees' efforts would be the first LLC not having a tenant for—and not receiving income from—the Portland Street property.

¶10          Initially, one of appellees' fathers was to purchase the Third Avenue property, which Weber knew as of September 2019. Instead, the father lent the purchase price to appellees, who then created the second LLC to purchase the Third Avenue property. Weber learned of the change in the details of the purchase on January 15, 2020. Regardless of that change, appellees' plan remained as Weber understood it: with appellees' help, the law firm would abandon the Portland Street property, would use the newly acquired Third Avenue property for the law firm's office, and would stop making payments to the first LLC.

¶11          And that is what came to pass. The law firm moved to the Third Avenue property in late January 2020. At that point, the law firm made its last monthly payment to the first LLC for the January 2020 expenses.

**PROCEDURAL HISTORY**

¶12          Weber filed a 2-count complaint in the superior court. The first count was for breach of fiduciary duty. The second count combined claims for breach of contract and breach of the covenant of good faith and fair dealing. The parties filed cross-motions for summary judgment.

¶13          The superior court denied Weber's motion, and Weber appealed that ruling. Because Weber's appellate briefing did not raise any argument regarding the superior court's denial of his motion, the court treats that issue as waived. *See Nelson v. Rice*, 198 Ariz. 563, 567 ¶ 11 n.3 (App. 2000) (ruling party waives argument by failing to raise it in opening brief).

4

¶14　　　Appellees moved for summary judgment on the fiduciary duty claim. Among other things, they argued the 2-year statute of limitations barred that claim because Weber knew or should have known the claim accrued no later than November 2019, but he did not file his complaint until January 2022. Appellees also moved for summary judgment on the contract and the good faith claims. The superior court granted summary judgment in appellees' favor. The superior court then awarded appellees $240,937.00 in attorney fees and $5,625.99 in taxable costs. The superior court later granted appellees $16,418.00 in additional attorney fees and $6.70 in additional taxable costs.

¶15　　　The court has jurisdiction over Weber's timely under Article VI, Section 9, of the Arizona Constitution, and A.R.S. § 12-2101.A.1.

## DISCUSSION

¶16　　　Summary judgment is appropriate when "the facts produced in support of the claim or defense have so little probative value . . . that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990); *see* Ariz. R. Civ. P. 56(a). As the plaintiff, Weber bears the burden of proof as to each of his claims. *See Smethers v. Campion*, 210 Ariz. 167, 170 ¶ 12 (App. 2005). Because the moving parties here, appellees, do not bear the burden of proof, they need only show the absence of evidence in the record supporting an essential element of the claim. *See Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 117 ¶ 22 (App. 2008). If the moving party makes that showing, the burden "shifts to the non-moving party to present sufficient evidence" of a genuine dispute of material fact. *Id.* at 119 ¶ 26.

¶17　　　The court reviews a superior court's grant of summary judgment *de novo*. *Zambrano v. M & RC II LLC*, 254 Ariz. 53, 58 ¶ 9 (2022). When reviewing a summary judgment ruling, the court views the facts and draws all reasonable inferences in the light most favorable to Weber as the non-moving party. *See Roebuck v. Mayo Clinic*, 256 Ariz. 161, 165 ¶ 11 (App. 2023). The court will affirm "for any reason supported by the record, even if not explicitly considered by the superior court." *See KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 236 Ariz. 326, 329 ¶ 14 (App. 2014).

I.　　**The undisputed material facts establish the 2-year statute of limitations bars Weber's fiduciary duty claim.**

¶18　　　Weber argues appellees, through the second LLC, breached their common-law fiduciary duty to the first LLC by competing against the first LLC for the law firm's tenancy. To prevail, Weber must prove 4

5

elements: (1) appellees owed a fiduciary duty to the first LLC; (2) appellees breached that duty; (3) the breach caused damages; and (4) there are damages. *See Smethers*, 210 Ariz. at 170 ¶ 12. Weber's fiduciary duty claim is subject to a 2-year statute of limitations. A.R.S. § 12-542; *see also Coulter v. Grant Thornton, LLP*, 241 Ariz. 440, 444 ¶ 9 (App. 2017).

**¶19**        Courts "disfavor statute of limitations defenses, preferring instead to resolve litigation on the merits when possible." *City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, 178 ¶ 5 (App. 2008). But statutes of limitations exist to "protect defendants and courts from stale claims where plaintiffs have slept on their rights." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 182 Ariz. 586, 590 (1995). For that reason, claims based on undisputed facts "clearly brought outside the relevant limitations period are conclusively barred." *Montano v. Browning*, 202 Ariz. 544, 546 ¶ 4 (App. 2002); *see also Hall v. Romero*, 141 Ariz. 120, 125, 127 (App. 1984) (granting summary judgment for moving party because non-moving party's claim was barred by the statute of limitations).

**¶20**        For purposes of the statute of limitations, a claim accrues when a plaintiff "knows or, in the exercise of reasonable diligence, should know the facts underlying the cause." *Gust*, 182 Ariz. at 588–89. The key inquiry is whether a plaintiff knew the defendant's identity and could connect the wrong to that defendant. *See Lawhon v. L.B.J. Inst. Supply, Inc.*, 159 Ariz. 179, 183 (App. 1988).

**¶21**        Though the trier of fact typically resolves a question of when a limitations period begins to run, the court reviews mixed questions of fact and law or legal conclusions *de novo*. *See Doe v. Roe*, 191 Ariz. 313, 323 ¶ 32 (1998); *Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 114 (1966). The court may "substitute [its] own analysis of the record" when the facts are undisputed. *Tovrea Land & Cattle Co.*, 100 Ariz. at 114.

**¶22**        In assessing a fiduciary duty claim, the focus is on the "nature of the defendant's preparations to compete." *See Sec. Title Agency, Inc. v. Pope*, 219 Ariz. 480, 492 ¶ 54 (App. 2008). In *Pope*, the employee breached her fiduciary duty to her employer by soliciting key managerial employees to join a competing company while she was still employed by that employer. *See id.* at 494 ¶ 63. She did not merely discuss the option with her co-workers but actively recruited them by telling them about benefits and compensation. *Id.* A person who owed a duty to an entity thus breaches their duty by soliciting another to compete with the entity through active preparation while that person is still a part of that entity. *See id.*

¶23 To overcome appellees' statute-of-limitations defense, Weber originally argued his claim did not accrue until mid-January 2020 when he learned appellees had an ownership interest in the Third Avenue property. But Weber's own words in his supplemental brief show the statute of limitations bars his common-law fiduciary duty claim. He conceded the breach occurred on October 4, 2019, because it was the date "appellees, along with [the third partner], formed [the second LLC], . . . for the purpose of engaging in the same business as that of the [first LLC], namely, holding and leasing real commercial property." And the undisputed evidence shows Weber knew all the material facts needed to trigger the statute of limitations by November 5, 2019.

¶24 Indeed, as of November 5, 2019, Weber knew the appellees were preparing to move their law firm's office to another property not owned by the first LLC. He also knew appellees solicited one of their fathers to purchase the property and lease it to the law firm while appellees were still members of the first LLC. *See Pope*, 219 Ariz. at 494 ¶ 63. Who ultimately owned the Third Avenue property, whether it be the father or the second LLC, does not matter because Weber knew appellees were making preparations to move their law firm to a property not owned by the first LLC, which as Weber says, rendered "[the first LLC] insolvent and without any immediate prospects." Weber thus knew—as of November 5, 2019—the first LLC would be losing the law firm's monthly payments even if the law firm did not stop making payments to the first LLC until January 2020.

¶25 So, paraphrasing *Hall*, "[t]he undisputed facts lead to the conclusion that [Weber] knew, or reasonably should have known of [his] possible claim against" appellees as of November 5, 2019 or even as early as October 4, 2019. *See Hall*, 141 Ariz. at 125. But Weber did not file this action against appellees until January 7, 2022, which is outside the relevant statute of limitations period. The undisputed facts and Weber's own words, thus, establish the 2-year statute of limitations bars his common-law fiduciary duty claim.

¶26 At bottom, Weber's fiduciary duty claim is time barred. It accrued more than 2 years before he filed his action against appellees.

## II. Weber did not waive his arguments on the contract and the good faith claims.

¶27 Appellees argue Weber waived these claims by not presenting the issue to the superior court. Consistently throughout the

litigation, both at the superior court and on appeal, the parties blended their arguments about the fiduciary duty, contract, and the good faith claims. The superior court did the same, not even mentioning the good faith claim in its final ruling.

¶28        Weber raised both the contract and good faith claims as 1 count in his complaint when they are 2 separate claims. He argued the same facts supporting his common-law fiduciary duty claim also supported these claims. Specifically, in Weber's response to appellees' motion for summary judgment, he said, "In breaching their fiduciary duty of loyalty, [appellees] breached Article [8.5] of the Company's Operating Agreement." And in Weber's attached statement of facts, he said, "Under Article [8.5] of [the first LLC's] Operating Agreement, each member agreed to have 'a duty of undivided loyalty to th[e] Company in all matters affecting th[e] Company's interests.'" Weber's response to the summary judgment motion also noted, "[appellees] do not assert that [Weber's] breach of contract claim is time-barred, the limitations period for which is six years." *See* A.R.S. § 12-548; *Zuckerman v. Transamerica Ins. Co.*, 133 Ariz. 139, 143 (1982). At bottom, Weber did not fail to present an argument for these claims. Rather, he incorporated his argument into his fiduciary duty claim, including the factual basis. Though admittedly thin, it is not a waiver, particularly when the superior court considered appellees' arguments.

¶29        Appellees' superior court briefing on the contract claim similarly was sparse. As Weber did, appellees relied on the discussion about the fiduciary duty claim when they discussed the contract and good faith claims. In their summary judgment motion, appellees addressed the 2 claims in only 2 paragraphs:

> [Appellees] did not breach Section 8.5 of the operating agreement for the reasons set forth above. In addition, there is no express term in [the first LLC's] operating agreement which compelled the Law Firm to remain in the First Office. And there is nothing in the operating agreement which precludes [appellees] from owning real property separately from [the first LLC]. As such, [Weber] cannot sustain a claim that the express terms of the operating agreement were breached.
>
> Also, [Weber] cannot claim that the implied covenant of good faith was breached either. There is nothing in the operating agreement which gives [Weber] a reasonable expectation that the Law Firm would stay in the First Office indefinitely, or

that [appellees] could not own other real property without [Weber]. Those are not benefits that [Weber] could have reasonably expected to receive under [the first LLC's] operating agreement.

¶30        Based on that limited briefing, the superior court said:

[Appellees] contend that [Weber's] breach of contract claim fails as a matter of law because (among other reasons) they did not breach Section 8.5 of [the first LLC's] Operating Agreement and there is no express term in the Operating Agreement compelling the Firm to remain in the First Office or precluding [appellees] from owning real property separately from [the first LLC]. [Weber] did not respond to [appellees'] arguments regarding the breach of contract claim. The Court agrees that [Weber] has not established a viable breach of contract claim. Accordingly, the Court will grant summary judgment for [appellees] and against [Weber] on this claim.

¶31        Though Weber's arguments admittedly were thin, Weber did not waive the claims, particularly when the superior court considered them. Indeed, if the court were to accept appellees' argument about the contract claim, the court would have to conclude the superior court never resolved the good faith aspect of Weber's case.

¶32        Appellees further argue Weber waived his arguments on those claims on appeal. Not so. Weber appealed the superior court's contract ruling. And in his opening brief, Weber discussed the elements of the contract and the good faith claims. Appellees answered back, arguing the court "should affirm summary judgment on the breach of contract (or good faith and fair dealing) claim.". Below and on appeal, Weber makes it clear he believes appellees breached the duty of loyalty—an express covenant—in the operating agreement—their contract. He ties it to a breach of the covenant of good faith. And he ties both claims to the same facts underlying his fiduciary duty claim.

¶33        In short, Weber did not waive his arguments.

### III. Weber established sufficient issues of material fact to survive summary judgment on his contract and good faith claims.

¶34 Weber argues the undisputed facts supporting his common-law fiduciary duty claim also support his contract and good faith claims. Appellees argue the same undisputed facts show they did not breach the operating agreement and Weber cannot establish damages. The superior court granted summary judgment for appellees on the contract claim, saying it was not viable. The superior court did not address Weber's good faith claim. Because the undisputed facts are subject to differing inferences, appellees' summary judgment arguments are unavailing. *See generally Beaudry v. Ins. Co. of the West*, 203 Ariz. 86, 91 ¶ 21 (App. 2002). To prevail on his contract claim, Weber must prove "existence of [a] contract, its breach and the resulting damages." *See Graham v. Asbury*, 112 Ariz. 184, 185 (1975). To prevail on his good faith claim, Weber must prove appellees acted in a way inconsistent with, or adverse to, Weber's "reasonably expected benefit of the bargain." *See Bike Fashion Corp. v. Kramer*, 202 Ariz. 420, 424 ¶ 14 (App. 2002) (quoting *Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 491 ¶ 64 (2002)); *see also Keg Rests. Ariz., Inc. v. Jones*, 240 Ariz. 64, 77 ¶ 45 (App. 2016). The 2 claims are different because "[a] party may breach an express covenant of a contract without breaching the implied covenant of good faith and fair dealing," and "breach its duty of good faith without actually breaching an express covenant in the contract." *Beaudry*, 203 Ariz. at 91 ¶ 18 (quoting *Wells Fargo Bank*, 201 Ariz. at 491 ¶ 64).

¶35 Because Weber's good faith claim also sounds in contract, "the remedy for breach of this implied covenant is ordinarily by action on the contract." *Southwest Savs. & Loan v. SunAmp Sys., Inc.*, 172 Ariz. 553, 557 (App. 1992) (quoting *Burkons v. Ticor Title Ins. Co. of Cal.*, 168 Ariz. 345, 355 (1991)); *see also Beaudry*, 203 Ariz. at 92 ¶ 22. This general rule applies absent a "special relationship," such as between an insured and an insurer. *Wells Fargo Bank*, 201 Ariz. at 491 ¶¶ 60–61. Because Weber has not argued a special relationship exists, he must show appellees exercised "discretion retained or unforeclosed under a contract in such a way as to deny [Weber] a reasonably expected benefit of the bargain." *See id.* at 492 ¶ 66 (quoting *Southwest Savs. & Loan*, 172 Ariz. at 558). Weber thus is limited to contract damages. *See id.* at 491 ¶ 61.

¶36 The court views the facts and draws all reasonable inferences in the light most favorable to Weber as the non-moving party. *See Roebuck*, 256 Ariz. at 165 ¶ 11. To begin, Weber points to the operating agreement as the controlling contract. Appellees do not challenge that point. An analysis

of Weber's fiduciary duty claim shows he came forward with evidence supporting the reasonable inference appellees breached the operating agreement's "duty of undivided loyalty" in section 8.5.

¶37 The undisputed facts show appellees were members of the first LLC throughout the relevant time period. Appellees thus owed the first LLC a contractual duty of undivided loyalty. Yet they engaged with others and each other to discuss moving the law firm from the first LLC's property. And ultimately, they created the second LLC, which purchased the Third Avenue property and leased that property to the law firm, leaving the first LLC without a tenant for some time. And unlike the fiduciary duty claim, the contract and good faith claims are not barred by a 2-year statute of limitations. *See* A.R.S. § 12-548 (imposing a 6-year statute of limitations); *see also Zuckerman*, 133 Ariz. at 142.

¶38 Based on those undisputed facts, a reasonable jury could infer appellees did not show "undivided loyalty to [the first LLC] in all matters affecting [its] interests." True enough, Arizona law also says, "A member does not violate a duty or obligation under this chapter or under the operating agreement solely because the member's conduct furthers the member's own interest." A.R.S. § 29-3409.E. And true, the operating agreement did not preclude appellees from owning other properties and leasing them out. And nothing precluded the law firm from moving. But a factfinder reasonably could infer appellees breached section 8.5 because evidence shows appellees established the means by which the law firm could move offices, abandon the first LLC, and thus cause the first LLC to lose the income from the law firm. Those inferences are for a jury, not a court on summary judgment. *See Bishop v. State, Dep't of Corr.*, 172 Ariz. 472, 475 (App. 1992).

¶39 And contrary to appellees' arguments, allowing Weber to move forward will not logically "make it unlawful for the [law firm] to move if it benefited [appellees] in any way." True, the law firm was not under any legal obligation to remain. But the alleged breach was not the law firm's decision to move. It occurred when appellees formed the second LLC and purchased the Third Avenue property to compete with the first LLC for the law firm's business.

¶40 Also, appellees argue Weber cannot show the first LLC sustained damages. Not so. A jury could draw varying inferences about whether the law firm could have moved as quickly as it did if appellees had not laid the groundwork by forming the second LLC and purchasing the Third Avenue property. *See generally Smethers*, 201 Ariz. at 170 ¶ 12. Groundwork Weber alleges violated appellees' contractual duty. As such, whether the first LLC incurred damages based on "lost rents" from the law firm is a question the court must leave to the jury to resolve. *See id.; see also Harris Cattle Co. v. Paradise Motors, Inc.*, 104 Ariz. 66, 68–69 (1968).

¶41 At bottom, a jury reasonably could find appellees' actions breached the express duty of loyalty in the operating agreement because appellees, as members of the first LLC, decided to create a competing LLC for the same purpose as the first LLC, which was to hold property to be used as the law firm's office. And from that, a jury reasonably could find the first LLC sustained damages.

¶42 Based on the above, Weber's contract and good faith claims survive summary judgment. *See Orme Sch.*, 166 Ariz. at 309.

## IV. The court awards no attorney fees on appeal.

¶43 Appellees seek attorney fees and costs on appeal under A.R.S. §§ 12-341, -341.01.A, and Rule 21, Arizona Rules of Civil Appellate Procedure. Because the court affirms in part and vacates in part, the court denies appellees' request for attorney fees and costs on appeal.

## CONCLUSION

¶44 The court affirms the superior court's judgment on Weber's fiduciary duty claim. The court vacates the superior court's judgment on Weber's contract and good faith claims and remands for further proceedings consistent with this decision. Because the court vacates and remands the contract and good faith claims, the court vacates those awards without prejudice for the superior court to award attorney fees and cost to the party who ultimately prevails on remand.

